UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 06-82-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BOBBY JOE CURRY and TAMMY | ) | **MEMORANDUM OPINION** |
| NAPIER, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On June 22, 2006, the Grand Jury sitting at London, Kentucky, returned an eighteen count indictment against Defendants Bobby Joe Curry and Tammy Napier.  For the most part, the counts allege that, at various times, the Defendants directly or indirectly possessed, or possessed with intent to distribute a variety of controlled substances.  The substances include: cocaine, oxycodone and methadone.  While most of the counts include Defendant Curry, Defendant Napier is named in two counts (Counts 1 and 16).

In Count 1, the Grand Jury alleges that:

On or about a day in November 2000, the exact date unknown, and continuing through on or about May 2, 2005, in Clay County, in the Eastern District of Kentucky, and elsewhere **BOBBY JOE CURRY, aka FABIO, and TAMMY NAPIER,** did conspire together and with others to knowingly and intentionally distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectible amount of cocaine, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

Count 16 contains the allegation that:

-1-

> On or about May 2, 2005, in Clay County, in the Eastern District of Kentucky, **BOBBY JOE CURRY, aka FABIO, and TAMMY NAPIER**, aiding and abetting each other, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841 (a)(1) and 18 U.S.C. § 2.

Although Defendant Napier is not named in Count 5, the United States has indicated that additional evidence received following the Grand Jury's action indicates that a superceding indictment may be returned which would add her as a Defendant to that count. That count alleges that:

> On or about November 14, 2003, in Clay County, in the Eastern District of Kentucky, **BOBBY JOE CURRY, aka FABIO,** did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine and a quantity of pills containing a detectable amount of oxycodone and methadone, all Schedule II controlled substances, all in violation of 21 U.S.C. § 841 (a)(1), and which resulted in the death of Stacey Elizabeth Harris.

[Record No. 3]

In the event the Defendants do not have prior, qualifying convictions, the statutory penalty if convicted under Count 1 is a term of imprisonment of not less than ten years nor more than life, a term of supervised release of at least five years and a fine of not more than $4,000,000.00. The statutory penalty for Count 16 includes a term of imprisonment of not more than 20 years, a term of supervised release of at least three years, and a fine of not more than $1,000,000.00. Under Count 5, if it is proven that a death resulted from the use of controlled substances, the statutory penalty is *not less than* 20 years imprisonment, a term of supervised release of at least three years, and a fine of not more than $1,000,000.00.

Because the indictment was sealed, the Pretrial Services Officer ("PSO") did not have the benefit of reviewing the nature or the charges returned against the Defendants before

-2-

preparing the Pretrial Services Reports that were presented to the United States Magistrate Judge for use in connection with determining whether the Defendants should be released pending trial. However, in connection with Defendant Curry's report, the PSO interviewed the Defendant and obtained additional information from the Defendant's mother, Cleo Curry.[1]

In relevant part, the PSO's report indicates that the defendant has two children from previous marriages, including Barbara Treadway, a resident of London, Kentucky. In addition, the report states that the Defendant has an eight year-old son through a prior relationship with Stacey Harris. Ms. Harris is now deceased, as referenced in Count 5 of the current indictment. In addition to this and other information concerning the Defendant's history, family ties, employment history, financial resources and health conditions, the report outlines the Defendant's drug addictions, treatment and counseling. In relevant part, the report states that:

> The defendant has admitted to a past addiction to numerous prescription medications. Mr. Curry states that as recently as two years ago, he was addicted to various prescription drugs including Valium, Xanax, Qualude, Oxycontin, Percadon, Tylox, Lorcet, and Lortab. The defendant also admitted to a previous addiction to cocaine. . . . The defendant reports that his last use of cocaine was approximately two to three years ago. . . . The defendant states that he is now clean and has not abused any drugs for the past two years.

In assessing the danger to the community and risk of flight posed by the Defendant, the PSO noted that "*[b]ecause of the Sealed Indictment, the nature of the instant offense was not used in the Assessment of Flight/Danger.*" Without assessing this additional and highly relevant

---

[1]    Warren Collins, Cleo Curry and Jackie Curry were named as a defendant in a separate indictment in April 2005. That indictment alleged that the named Defendants conspired to possess, with intent to distribute a measurable quantity of cocaine during the period January through April 1, 2004. Defendants Jackie Curry and Warren Collins subsequently entered guilty pleas and were sentenced in November 2005. In August 2005, the United States moved the Court to dismiss the action relating to Cleo Curry due, in part, to her advanced age (now, 86 years-old). That motion was granted by presiding Judge Karl S. Forester. *See* London Criminal Action No. 6: 05-29.

-3-

issue, the PSO recommended that the Defendant be released, subject to eight enumerated conditions.

Two addenda to the Pretrial Services Report are significant. The first addendum to the Pretrial Services Report for Defendant Curry consists of information regarding current charges and convictions as well as additional charges that have been dismissed. While this information is not definitive with respect to past felony/misdemeanor drug convictions, it does indicate that two matters have been pending against Curry since 2004 in the Clay Circuit Court [Nos. 04-CR-00087 and 04-CR-00055] with no action having been taken. In addition to these charges, this addendum reflects a prior conviction for failure to appear [Clay Circuit Court, No. 04-F-00129].

It appears that the second addendum was prepared after considering the nature of the charges and additional information provided by the United States Attorney's office. A relevant portion of this addendum indicates:

> The instant offense in this matter involves the possession and distribution of cocaine, oxycodone, methadone, and hydrocodone. Count five of the Indictment charges the defendant with distribution of cocaine along with a quantity of pills containing oxycodone and methadone, which resulted in the death of Stacy Harris, the defendant's former girlfriend and the mother of Mr. Curry's son. Information provided by the U.S. Attorney's Office indicates that Mr. Curry has recently met with his co-defendant, Ms. Tammy Napier, in an attempt to alter testimony to prevent prosecution. Evidence of active attempts to alter testimony increases the defendant's danger to potential witnesses in the community.

Based upon this additional information, the PSO recommended detention of Defendant Curry.

Similar information was compiled for the Magistrate Judge's consideration in connection with Defendant Napier. The Pretrial Services Report for Napier outlines her family ties to the

area as well as other, relevant family, health and employment information.  In relevant part, the report indicates that Napier became addicted to pain medication following a 2004 automobile accident which injured her back.  She subsequently overdosed after consuming a number of phenol patches.  Before her arrest in this matter, Napier attended a methadone clinic in Corbin, Kentucky.  In addition, she is also prescribed Prozac for depression.  The first addendum to this report outlines the Defendant's prior convictions as well as two actions that remain pending in Laurel and Clay Counties for operating a vehicle under the influence of alcohol/drugs (May 2005; Laurel District Court No. 05-T-01881) and for trafficking in a controlled substance/1st degree (May 2005; Clay Circuit Court No. 05-CR-00177).

While the PSO initially recommended that Napier be released pending trial, subject to a number of conditions similar to those to be imposed on Defendant Curry, that recommendation was amended based on information outlined in the second addendum.  After explaining that the earlier recommendation did not take into account several relevant factors, the PSO noted that, although Napier has family ties that diminish her risk of flight,

> [she] faces a mandatory minimum statutory penalty of 10 years and a maximum penalty of life imprisonment if convicted on the instant offense.  Further, information provided by the U.S. Attorney's Office suggests that Napier may be involved in the death of Stacy Harris; therefore, a superceding indictment may occur which would substantially raise Napier's guideline range of imprisonment if convicted.  Given the stern penalty associated with the charges against the defendant, the risk of non-appearance is increased.

> The instant offense involves a conspiracy to distribute over five kilograms of cocaine.  Evidence provided by the U.S. Attorney's Office also indicates that the defendant may have been involved in the death of Stacy Harris, which is alleged in count five of the Indictment against co-defendant, Bobby Curry.  Further evidence suggests that Napier and co-defendant Curry have colluded in an attempt to alter testimony to prevent prosecution.  Such attempts increase the defendant's

-5-

danger to potential government witnesses.  Tammy Napier poses a substantial danger to the community as well as potential witnesses in the community.

Again, based on this additional information, the PSO changed his initial recommendation and concluded that, in his opinion, no condition or combination of conditions can adequately address the substantial danger posed by this Defendant.

A detention hearing was held in this matter on July 5, 2006, before United States Magistrate Judge J. B. Johnson, Jr.  Because a statutory presumption in favor of detention was applicable, the Defendants had the burden of demonstrating that conditions could be imposed that would reasonably assure the Defendants' appearance as well as the safety of the community. 18 U.S.C. §3142.  In attempting to overcome the presumption of detention, Defendant Curry presented the testimony of George Roberts, pastor of the Potter's House Holiness Church [Record No. 29, pp. 1-15], and the Defendant's daughter, Barbara Treadway, [Record No. 29, 15-22].  Defendant Napier presented the testimony of two witnesses: Velma Anderson, Napier's current employer [Record No. 29, pp. 23-30], and Napier's sister, Wanda McQueen [Record No. 29, pp. 30-35]  In addition to the testimony offered by the Defendants, the United States presented the testimony of Kentucky State Police Detective Greg Pace. [Record No. 29, pp. 35-48]

By Memorandum Opinion dated July 13, 2006, the Magistrate Judge concluded that, although not an easy case to decide, the Defendants had successfully rebutted the statutory presumption of detention.  Apparently swayed by Defendant Curry's religious conversion, the Magistrate Judge noted that "the evidence shows that more than one year ago he "accepted Christ", joined the church, has not been accused of any drug dealing and in fact has gone on

national television and regionally appeared various forums warning others of the dire consequences of drug abuse.   In addition, the Magistrate Judge placed reliance on the Defendant's ties to the Clay County community as well as his family responsibilities. [Record No. 22, pp. 2-3] With respect to Defendant Napier, the Magistrate Judge cited her ties to the community, lack of felony convictions, family responsibilities, and lack of drug abuse for the past six months in concluded that Napier should not be detained.

The Magistrate Judge discounted the testimony of Detective Pace in reaching his conclusions.  The Magistrate Judge found that, "in all due respect, that testimony fails to show that the defendants have 'reached out' to witnesses who may have knowledge of the death of Stacey Harris."  And after acknowledging that Defendant Curry has a history of being a part of the "drug problem" existing in Clay County, he concluded that Curry has demonstrated a "clean break" for over one year as evidenced by his religious conversion and public appearances to dissuade others from drug abuse. [Record No. 22, pp. 3-4]

Following receipt of the Magistrate Judge's Memorandum Opinion, the United States filed a Motion for Expedited Review and Revocation of Order Releasing Defendants Pending Trial. [Record No. 23] A hearing on that motion was held July 14, 2006.  During this hearing, the United States offered additional testimony from Detective Greg Pace.  This testimony addressed Defendant Napier's possible involvement in supplying drugs which are alleged to have caused the death of Stacey Harris.  Based upon this testimony, it appears that a superceding indictment may be returned in this matter which would subject Napier to greater potential penalties if convicted in this action.  Additional testimony was also presented by Detective Pace

concerning the Defendants' contacts with each other following Defendant Curry's arrest. Following these conversations, it appears that Defendant Napier contacted a potential witness, Barbara Treadway, to advise that "it appears that the FBI has information concerning the source of drugs that killed Stacey Harris."  Standing alone, these conversations do not establish witness tampering; however, they do present some evidence of danger to the public (which would include potential witnesses) where, as here, there is no indication that the Defendants have maintained a close relationship since commencing their "drug-free" lifestyle.  Further, this testimony also causes the Court to question the motives of Barbara Treadway, a witness for Defendant Curry at the July 5, 2006, detention hearing.

In addition to offering details regarding Harris' death and explaining the inconsistent testimony and statements offered by Curry concerning the length of time he has been "drug-free", Detective Pace testified that another person, Jimmy Roark, died at the Curry's residence several months prior to Harris' death.  And with respect to Defendant Napier, Detective Pace indicated that the Defendant was experiencing severe withdrawal symptoms during her current incarceration at the Laurel County Detention Center.  While such symptoms may be related to the legal administration of Methadone, it is an indication that she is far from "drug-free".  Thus, she poses a greater danger to the community that the Magistrate Judge did not adequately consider.  Based on this testimony and arguments of counsel, the Court granted the United States' request that the Magistrate's Order or release be held in abeyance until the undersigned could review the transcript of the July 5, 2006, hearing.  That transcript was filed July 17, 2006.

After reviewing the transcript of the July 5, 2006, hearing and considering all evidence and testimony, the Court concludes that the Magistrate Judge erred in concluded that the Defendants have rebutted the statutory presumption of detention. First, the Magistrate Judge placed excessive weight on the testimony of George Roberts and the allegations regarding Defendant Curry's religious conversion. Counsel questioned Roberts concerning Curry's current reputation for *drug use* and his willingness to speak out about *drug abuse*. However, Roberts acknowledged that Curry lives in an area where drugs are easily obtained. Roberts did not testify concerning Curry's relatively recent involvement in *drug transactions*. The fact that Defendant Curry may not be *abusing* drugs at the present time does not indicate that he is not involved in drug *transactions* of the type alleged in the indictment.

Likewise, Defendant Curry's family ties and responsibilities are entitled to little weight under the circumstances of this case. Other family members have shown a willingness to care for Defendant Curry's minor child in the past. There is no indication they would not do so in the future if he leaves the district. While the Defendants' conversations and attempt to contact potential trial witnesses may indicate an attempt to engage in improper or illegal activity, the Court need not make this determination in order to grant the relief sought by the United States. In light of the nature of the charges against the defendant, there is a substantial likelihood of non-appearance if he is released as directed by the Magistrate Judge.

Further, the Court is not convinced that he does not pose a danger to the community if released. Although the deaths occurred several months ago, it is significant that two individuals have allegedly died at Curry's residence as a result of what appears to be drug overdoses. And

as indicated during the July 14, 2006, hearing, the Court has had other cases from this same area of Clay County involving illegal drug distribution.

With respect to Defendant Napier, the Court does not believe that much weight should be given to the testimony of her sister or employer.  Review of the detention hearing transcript convinces the Court that while Ms. Anderson is interested in having an employee return to work, she is not familiar with Napier's reputation in dealing drugs or her former or current addictions. If released, the undersigned concludes that Defendant Napier would pose a danger to herself as well as the public.  Further, in light of the present and potential charges (and potential punishment faced) this Defendant also poses an unacceptable risk of flight if released. Accordingly, the Court concludes that the Magistrate Judge erred in concluding that she had overcome the statutory presumption of detention.

In summary, after conducting a de novo review of the issue of detention, the Court concludes, by clear and convincing evidence, that both Defendants pose a danger to the public if released.  Further, the Court determines, by a preponderance of the evidence, that both Defendants are a risk of flight if released.  18 U.S.C. § 3142 (f).  Accordingly, it is hereby

**ORDERED** that the United States' motion to revoke the Order releasing the Defendants is **GRANTED**.  The Magistrate Judge's Order is hereby **REVOKED** and **SET ASIDE**.  For the reasons outlined above, the Defendant are **ORDERED** detained, pending the trial of this matter.

This 18th day of July, 2006.



Signed By:

*Danny C. Reeves*

**United States District Judge**

-10-